IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

RASUNDRA ELEY, individually                                          PLAINTIFF
and as the next friend of J.Y.

V.                                         CIVIL ACTION NO. 1:15-CV-00108-SA-DAS

THE CITY OF WEST POINT MISSISSIPPI                                   DEFENDANT

MEMORANDUM OPINION

Rasundra Eley filed her Complaint [1] individually and as the next friend of her minor daughter J.Y. against the City of West Point on June 8, 2015. Eley seeks redress for alleged constitutional violations under 42 U.S.C. §1983. Eley also requests that this Court exercise supplemental jurisdiction over several state law claims. Now before the Court is the City's Motion [92] requesting summary judgment in its favor on all claims. Despite the Court's grant of addition time, Eley failed to respond.[1]

*Factual and Procedural Background*

On October 2, 2014 Eley observed her sixteen year old daughter, J.Y., who has a history involving mental health issues, "in a crisis" at their home. According to Eley, J.Y. was agitated, standing out in the rain, using profanity and refusing to come inside. Fearful that J.Y. may harm herself, Eley contacted J.Y.'s therapist at Community Counseling. Community Counseling dispatched social worker and crisis team member Patricia Harris to the home. When Harris arrived at the home and made contact, J.Y. immediately ran away. Unable to locate J.Y., Harris

---

[1] Several weeks after the extended time to respond to the City's motion for summary judgment expired, and after the City filed a Motion [102] to grant its motion for summary judgment as confessed, the Plaintiff filed an out of time request for addition time [104]. The Court denied this request as untimely, and informed the Plaintiff of her right to re-urge the Motion as one for leave to file out of time responses, attach proposed responses, and advise the Court whether the motion was opposed, in accordance with Local Uniform Civil Rules 7 and 15. The Plaintiff failed to respond. Because Rule 56 makes it clear that there is "no summary judgment by default" and the lack of a response by the Plaintiff does not alter the Court's summary judgment inquiry, the City's Motion [102] to grant its motion for summary judgment as confessed is DENIED. *See* FED. R. CIV. P. 56; *Calais v. Theriot*, 589 F. App'x 310, 311 (5th Cir. 2015); Hibernia Nat'l Bank v. Administracion Cent. Sociedad Anonima, 776 F.2d 1277, 1279 (5th Cir. 1985).

contacted the Clay County Youth Court. The Youth Court issued a Pickup Order instructing any law enforcement officer to apprehend J.Y. and take her to her mother at her home address. At some point, J.Y. returned home and attended school the next day, October 3, 2014.

Eley remained concerned that J.Y. would harm herself so she contacted Alliance Health Center and requested inpatient psychiatric treatment for J.Y. Because Eley knew that J.Y. may not go to Alliance willingly, she called 911 and requested an ambulance to transport J.Y., hoping that the paramedics would be able to sedate her. Eley informed the 911 operator that J.Y. would not go willingly and that she may be combative. The 911 operator informed Eley that police would be dispatched along with the ambulance. Eley did not inform J.Y. of the plan to transport her to Alliance.

West Point police officer Nick Coe was the first to arrive at Eley's home. Coe approached the front porch where J.Y. and Eley were seated. Coe greeted J.Y. who immediately indicated, "I'm not going back, I'm not going back." J.Y. then got up and attempted to run away. Eley grabbed her by the shirt but J.Y. pushed her away and attempted to run by Officer Coe. Coe grabbed J.Y. from behind, put his arm around her neck, and subdued her using a vascular restraint. By this time, a second police officer, Anderson had arrived. According to Eley, J.Y. was resisting the officers by kicking and squirming and trying to get away.[2] Anderson put handcuffs on J.Y. An ambulance and two Emergency Medical Technicians arrived at the home. J.Y. calmed down temporarily and the paramedics talked with J.Y. in an attempt to convince her to allow them to transport her in the ambulance. J.Y. refused to go. Social worker Harris was called to the home.

When Harris arrived, the police, J.Y., Eley, and the paramedics were gathered under the carport. A few neighbors were observing. J.Y. was handcuffed but otherwise unrestrained.

---

[2] The Plaintiff's complaint alleges that J.Y. went unconscious but this allegation is unsupported by record evidence.

According to Eley, J.Y. became increasingly angry, moving around and repeating, "I'm not going back, I'm not going back." Also according to Eley, J.Y. threatened several people present repeatedly shouting "Bitch, I will hit you in the face" at social worker Harris, and "I will hit you in the face" at each of the paramedics. J.Y. also threatened a neighbor that was pointing his cell phone at her by shouting "Y'all got him recording me? Mother Fucker, I will hit you in the face too."

At this point, J.Y. managed to slip one of her hands out of the handcuffs and took off, running down the street. Officer Coe chased after her and while running, deployed his taser into her back. J.Y. fell to the street and cut her chin requiring stiches. J.Y. was transported to the emergency room for treatment. Later that same night she was transported to Alliance Health Center for psychiatric treatment where she remained for a matter of months.

Eley filed this case on J.Y.'s behalf against the City of West Point. In her Complaint, Plaintiff Eley asserts a federal claim under 42 U.S.C. §1983 for alleged constitutional violations. Plaintiff Eley also requests that the Court exercise supplemental jurisdiction over a number of state law claims including battery, false imprisonment, negligent hiring, negligent entrustment, and intentional infliction of emotional distress. Now before the Court is the Defendant City of West Point's Motion for Summary Judgment. The City requests that the Court grant summary judgment in its favor on all of the Plaintiff's claims. The City's primary argument is that the Plaintiff failed to bring forth any evidence of an "official policy," an essential element of her claim against the City under §1983. As noted above, the Plaintiff failed to respond.

*Standard of Review*

Federal Rule of Civil Procedure 56 governs summary judgment. Summary judgment is warranted when the evidence reveals no genuine dispute regarding any material fact, and the

3

moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Id*. at 323, 106 S. Ct. 2548. The nonmoving party must then "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'" *Id*. at 324, 106 S. Ct. 2548 (citation omitted). In reviewing the evidence, factual controversies are to be resolved in favor of the non-movant, "but only when . . . both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). When such contradictory facts exist, the Court may "not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000).

Even though the Plaintiff did not respond to the instant summary judgment motion, Rule 56 makes it clear that there is "no summary judgment by default" and the lack of a response by the Plaintiff does not alter the Court's summary judgment inquiry. *See* FED. R. CIV. P. 56(e) advisory committee notes to 2010 amendments. Summary judgment may only be granted if it is appropriate to do so. *See* FED R. CIV. P. 56(a). "Although '[a] motion for summary judgment cannot be granted simply because there is no opposition' . . . a court may grant an unopposed summary judgment motion if the undisputed facts show that the movant is entitled to judgment

as a matter of law." *Calais v. Theriot*, 589 F. App'x 310, 311 (5th Cir. 2015) (quoting *Hibernia Nat'l Bank v. Administracion Cent. Sociedad Anonima*, 776 F.2d 1277, 1279 (5th Cir. 1985)).

*Municipal Liability under 42 U.S.C. §1983*

At the outset, the Court notes that the Plaintiff is asserting her federal claim under §1983 against the City of West Point and not against Officer Coe although her claim is premised, at least in part, on Coe's actions. Under §1983, a city is not liable simply because it employed a constitutional wrongdoer. *Zarnow v. City of Wichita Falls, Tex.*, 614 F.3d 161, 167 (5th Cir. 2010) (stating "a municipality may not be subject to liability merely for employing a tortfeasor"). Instead, a city may only be held liable under §1983 when the violation of the plaintiff's federally protected right is attributable to the enforcement of a municipal policy or pattern. *Hall v. Robinson*, 618 F. App'x 759, 763 (5th Cir. 2015) (citing *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 691, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978)). In other words, §1983 municipal liability may not be based on *respondeat superior*. *Zarnow*, 614 F.3d at 167 (citing *Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 415, 117 S. Ct. 1382, 137 L. Ed. 2d 626 (1997)).

In order to sustain her claim the Plaintiff must demonstrate that J.Y.'s constitutional rights were violated by Coe, and that the violation is attributable to the enforcement of a City policy or practice. *Saenz v. City of El Paso*, 637 F. App'x 828, 831 (5th Cir. 2016) (citing *Valle v. City of Houston*, 613 F.3d 536, 541 (5th Cir. 2010). The Plaintiff may accomplish this in a number of ways. Generally, municipal liability may be based upon a formally promulgated policy, a well settled custom or practice, a final decision by a municipal policymaker, or deliberately indifferent training or supervision. *Valle*, 613 F.3d at 541-42 (citing *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001)). The Plaintiff has not alleged any formal

policy, well settled customs, or decisions by a City policy maker. Based on the allegations in her complaint, the Plaintiff bases her claim on deliberately indifferent training.

To succeed on her failure to train claim, the Plaintiff must show three things: (1) the training procedures of the City's policymaker were inadequate, (2) the City's policymaker was deliberately indifferent in adopting the training policy, and (3) the inadequate training policy directly caused the plaintiff's injury. *Conner v. Travis Cty.*, 209 F.3d 794, 796–97 (5th Cir. 2000) (citing *Baker v. Putnal*, 75 F.3d 190, 200 (5th Cir. 1996)). "Thus, a municipality's failure to train its officers can give rise to § 1983 liability if the municipality's failure to adopt an adequate training policy is the *moving force* behind a constitutional violation." *Saenz*, 637 F. App'x at 831-32 (citing *Connick v. Thompson*, 563 U.S. 51, 61, 131 S. Ct. 1350, 179 L. Ed. 2d 417 (2011); *Kitchen v. Dallas Cty.*, 759 F.3d 468, 476–77 (5th Cir. 2014)) (emphasis added). However, "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Saenz*, 637 F. App'x at 832 (quoting *Connick,* 563 U.S. at 61, 131 S. Ct. 1350).

"Deliberate indifference is more than mere negligence." *Conner*, 209 F.3d at 796–97 (citing *Rhyne v. Henderson County*, 973 F.2d 386, 392 (5th Cir. 1992) ("While the municipal policy-maker's failure to adopt a precaution can be the basis for § 1983 liability, such omission must amount to an intentional choice, not merely an unintentionally negligent oversight."); *see also Doe v. Taylor Independent Sch. Dist.*, 15 F.3d 443, 453 n. 7 (5th Cir. 1994) (distinguishing "deliberate indifference" from "gross negligence" by noting that the former is a heightened degree of negligence, [whereas] the latter is a "lesser form of intent") (internal quotations omitted)). Thus, the Plaintiff must show that, "in light of the duties assigned to [Coe], the need for more or different training is obvious, and the inadequacy so likely to result in violations of

constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *Conner*, 209 F.3d 797 (citing *City of Canton,* 489 U.S. at 390, 109 S. Ct. at 1205; *Benavides v. County of Wilson*, 955 F.2d 968, 972 (5th Cir. 1992)).

*Discussion and Analysis*

In part because the Plaintiff failed to respond to the motion for summary judgment, she failed to produce any evidence in support of her claim. "The failure to train can amount to a policy if there is deliberate indifference to an obvious need for training where citizens are likely to lose their constitutional rights on account of novices in law enforcement." *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 850 (5th Cir. 2009) (internal quotation omitted). The Fifth Circuit has held that "to hold a municipality liable for failure to train an officer, it must have been obvious that the highly predictable consequence of not training its officers was that [. . . the constitutional] rights of citizens were at risk." *Peterson*, 588 F.3d at 850 (citing *Brown v. Bryan Co., Okla.*, 219 F.3d 450, 461 (5th Cir. 2000)). Notably the Plaintiff's claim is based only on a single incident. Although, "under certain circumstances, §1983 liability can attach for a single decision not to train an individual officer" "a showing of deliberate indifference generally requires a showing of more than a single instance of the lack of training or supervision causing a violation of constitutional rights." *See Peterson.*, 588 F.3d at 849; *Clyce v. Hunt Cty., Tex.*, 515 F. App'x 319, 324 (5th Cir. 2013); *see also Conner*, 209 F.3d at 797.

The Plaintiff has not alleged any decision by the City not to train Officer Coe or that the City was aware of any need for training, and then failed to take the necessary steps to train these officers. The City, on the other hand, has produced evidence that Coe received formal training in the proper use of force and training in mental health first aid, specifically to provide initial help to people experiencing mental health problems such as depression, anxiety disorders, psychosis,

and substance use disorders. There is simply no evidentiary support in the record to support any theory of municipal liability based on a failure to train.

In addition, the Plaintiff has presented no material fact question to show that it should have been *obvious* to the policymakers that the risk of serious injury was a "highly predictable consequence" of any failure to train. *See Peterson*, 588 F.3d at 849 (citing *Estate of Davis ex rel. McCully v. City of North Richmond Hills,* 406 F.3d 375, 383, 386 (5th Cir. 2005) (deliberate indifference usually requires "at least a pattern of similar incidents in which the citizens were injured", and "narrow" single incident exception has applied when the court finds a complete failure to train, not just a failure to train in "one limited area") (internal citations omitted)).

Finally, in both her complaint and her interrogatories, the Plaintiff alleges mere negligence by the City for its alleged training deficiencies. As noted above, the deliberate indifference standard applicable here requires substantially more than negligence. *Conner*, 209 F.3d at 796–97; *Rhyne*, 973 F.2d at 392. For all of these reasons, the City of West Point's Motion for Summary Judgment is granted as to the Plaintiff's federal claim brought under 42 U.S.C. §1983.

In conclusion, the Court notes that the factual allegations in the complaint, particularly with regard to the use of a taser on a juvenile with mental health issues are serious. Because the Court finds the analysis of the Plaintiff's case relative to the city policy and training issue dispositive, the Court will not reach the substance of these alleged constitutional violations.

*Supplemental Jurisdiction over State Law Claims*

In this case, the Plaintiff's federal §1983 claim is the jurisdiction-conferring claim: a claim that, if asserted alone would give the district court subject matter jurisdiction. 28 U.S.C. § 1367; *Brookshire Bros. Holding v. Dayco Prod., Inc.*, 554 F.3d 595, 601–03 (5th Cir. 2009). The

statutory factors in 28 U.S.C. §1367 as well as the common law factors of judicial economy, convenience, fairness, and comity guide this Court's analysis of whether to exercise supplemental jurisdiction over state law claims. *Brookshire*, 554 F.3d at 601–03 (citing *Mendoza v. Murphy,* 532 F.3d 342, 346 (5th Cir. 2008).

> "Section 1367 authorizes a court to decline supplemental jurisdiction over a state law claim if: (1) the claim raises a novel or complex issue of state law; (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction; (3) the district court has dismissed all claims over which it has original jurisdiction; or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction."

28 U.S.C. § 1367(c); *Brookshire*, 554 F.3d at 601–03. "The general rule is that a court should decline to exercise jurisdiction over remaining state-law claims when all federal-law claims are eliminated before trial, but this rule is neither mandatory nor absolute; no single factor is dispositive." *Brookshire*, 554 F.3d at 601–03; *Batiste v. Island Records Inc.,* 179 F.3d 217, 227 (5th Cir. 1999) (citations omitted).

Relative to the instant case, the Court finds that the Plaintiff's numerous state law claims contain difficult state law issues particularly with respect to the Mississippi Tort Claims Act. Indeed, as the Defendant notes in their summary judgment brief, relevant Mississippi case law on some of the Plaintiffs claims is "sparse." The Court also finds that the Plaintiff's numerous state law claims substantially predominate over the single, now-dismissed federal claim.

As to the common law factors, other than the instant motion, the Court has not entertained any dispositive motions in this case, there have been very few discovery issues, and the record in this case is relatively brief. *Compare Batiste*, 179 F.3d at 227-28 (holding that the district court abused its discretion in declining to exercise supplemental jurisdiction over

remaining state-law claims due to the absence of any difficult state-law issue in the remaining claims and the district court's intimate familiarity with the claims as a result of the fact that the case had been pending in the district court for almost three years, produced more than sixteen volumes of record, resulted in numerous depositions and discovery disputes, and required significant consideration by the district court of multiple motions to dismiss claims or grant summary judgment); *and Newport Ltd. v. Sears, Roebuck and Co.*, 941 F.2d 302, 308 (5th Cir. 1991) (holding that the district court abused its discretion in remanding state law claims because those claims presented no novel or especially unusual questions and the litigation in federal court had proceeded for four years and produced twenty-three volumes and thousands of pages of record, resulted in the preparation of a pretrial order exceeding two-hundred pages, over a hundred depositions, and nearly two-hundred-thousand pages of discovery production); *with Parker & Parsley Petroleum Co. v. Dresser Indus.*, 972 F.2d 580, 587–90 (5th Cir. 1992) (finding that the district court abused its discretion in retaining jurisdiction over state-law claims following the dismissal of all federal-law claims because the proceedings were at a relatively early stage when the district court elected to retain jurisdiction after dismissing all federal claims—the case had been pending for only nine months and discovery had not been completed—and there was no indication that the district judge had substantial familiarity with the merits of the case; trying the remaining state issues in state court would not impose any significant additional burdens on the parties such as repeating the effort and expense of the discovery process; the re-litigation of procedural matters in state court would not pose any undue hardship; and the case involved difficult state-law issues that were best left to the state courts). The Court finds the circumstances of the instant case much more analogous with those in *Parker* than with the circumstances in *Batiste* or *Newport*.

Finally the Court notes that the Plaintiff has not participated in the prosecution of her case in several months making it unlikely that a declination to exercise supplemental jurisdiction over her state law claims will impose any significant additional burdens on the parties. *Brookshire*, 554 F.3d at 601–03; *Mendoza*, 532 F.3d at 346.

For the reasons stated above, Defendant the City of West Point's Motion for Summary Judgment [92] is GRANTED as to the Plaintiff's federal claim brought under 42 USC §1983. The Plaintiff's §1983 claim against the City is DISMISSED with prejudice. As to the Plaintiff's remaining state law claims, the Court declines to exercise supplemental jurisdiction over these claims. All of the Plaintiff's state law claims are DISMISSED without prejudice. This CASE is CLOSED.

So ORDERED on this the 9th day of January, 2016.

  /s/ Sharion Aycock
UNITED STATES DISTRICT JUDGE